**FILED**
**Mar 14, 2024**
**03:20 PM(ET)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | | |
|---|---|---|
| **Anita Reed,** | ) | **Docket No.: 2021-01-0883** |
| Employee, | ) | |
| v. | ) | |
| **Brightspring Health Services,** | ) | **State File No.: 3933-2020** |
| Employer, | ) | |
| and | ) | |
| **Indemnity Ins. Co. of North America,** | ) | **Judge Thomas Wyatt** |
| Carrier. | ) | |

## COMPENSATION ORDER

Anita Reed sought permanent total disability benefits after a settlement of an original award, or alternatively, resulting or extraordinary awards. She also sought future medical benefits, including for an upper-back injury, and attorney's fees.

Brightspring Health Services, also referred to during the hearing by its pre-merger name, Adoration Health, countered that Ms. Reed is not entitled to additional permanent disability benefits because she unreasonably refused an offer to return to work, has no permanent work restrictions, and has no proof of her lost capacity to work.

For the reasons below, the Court awards Ms. Reed a resulting award of permanent disability benefits and future medical benefits, including for the upper back. In addition, her request for attorney's fees from Brightspring is denied.

### History of Claim

Ms. Reed is 60 years old. She has a general equivalency diploma, and before becoming certified as a nurse's aide, she worked in fast food restaurants and a carpet mill. At the time of her injury, she cared for hospice patients.

1

On January 9, 2020, Ms. Reed sustained neck, right-shoulder, thoracic and upper-back injuries while pulling and turning a patient. She selected a physician from a panel, who recorded her reports of neck, right shoulder, and upper-back pain, diagnosing cervical, right-shoulder, and thoracic strains. After three months, he referred her to orthopedists Dr. Todd Bell for her shoulder and Dr. Alex Sielatycki for her spine.

Dr. Bell provided conservative care, while Dr. Sielatycki offered injections. Dr. Sielatycki placed Ms. Reed at maximum medical improvement in November 2020 because she declined the injections. A functional capacity evaluation that same month was interpreted as invalid because of inconsistent effort. Ms. Reed testified that she understood she was supposed to stop if she felt the testing might worsen her injuries, which she did. She offered to retake the test, but that was never authorized.

In December 2020, Dr. Bell rated Ms. Reed with a 0% impairment and released her to return to work without restrictions.[1]

In early 2021, Ms. Reed returned to Dr. Sielatycki, who rescinded maximum medical improvement when she agreed to the injections.[2] He placed her at maximum medical improvement on September 7, 2021, with 11% impairment. Dr. Benjamin Geddes assumed Ms. Reed's spinal care when Dr. Sielatycki moved his practice to another state.

On May 17, 2022, the Court approved a settlement of Ms. Reed's original award of permanent partial disability benefits. The award totaled $20,380.13 based on the 11% impairment. The settlement agreement stated that the original compensation period expired on August 19, 2022, and the parties agreed to open future medical benefits under Dr. Bell for the shoulder and Dr. Geddes for the "neck injury." The agreement noted Brightspring's dispute to Ms. Reed's entitlement to additional permanent disability benefits but preserved her right to pursue a resulting award or extraordinary benefits. It was silent on Ms. Reed's right to pursue permanent total disability benefits.

Ms. Reed testified that she never returned to work after the injury. She cited pain and risk of reinjury from her work duties as reasons she did not return to caring for hospice patients. Instead, she filed for Social Security disability benefits. She asserted that, due to her injuries, she cannot move, turn, and assist bed-bound patients with bathing and personal needs; make a bed around a bed-bound patient; assist ambulatory patients with bathing and personal needs; and keep a patient safe while being supported by a Hoyer lift. She also testified that she cannot perform the extensive standing, bending, and lifting required by her previous work in fast food restaurants and a carpet mill.

---

[1] Brightspring's former branch manager testified that she contacted Ms. Reed to return to work in December 2020. She stated that Ms. Reed declined to return because she was caring for a family member, a statement with which Ms. Reed disagreed. The manager instructed Ms. Reed to turn in her work computer but only for a software update. Brightspring never gave the computer back to Ms. Reed.

[2] Brightspring continued to pay temporary disability benefits after this date.

2

Ms. Reed has basic computer skills and can perform internet research but has never worked using these skills. She is articulate and teaches a weekly Bible class.

As to whether Brightspring made reasonable efforts to return her to work, Ms. Reed testified that no one contacted her to return to her nurse's aide job for more than five months after Dr. Sielatycki placed her at maximum medical improvement. Further, she assumed Brightspring did not intend to return her to work because it asked her to turn in her computer months earlier.[3]

Ms. Reed's and Brightspring's counsel had email discussions in November and December 2021 that included whether Brightspring would return Ms. Reed to work. In the emails, Ms. Reed's attorney argued that Brightspring constructively terminated Ms. Reed when it failed to return her to work soon after Dr Sielatycki placed her at maximum medical improvement. Brightspring's counsel denied that Ms. Reed was terminated.

Brightspring sent Ms. Reed a February 22, 2022 letter giving her a February 28 deadline to state her intentions about returning to work. At this point, Ms. Reed's nurse's aide certification had lapsed. The letter stated that, if she did not meet this deadline, Brightspring would consider that she voluntarily resigned. Ms. Reed argued that Brightspring sent the letter to improve its legal position, not to facilitate her return to work.

Human resources specialist Melanie Murray authored the letter. She testified that confusion during the merger between Brightspring and Adoration may have accounted for the fact that no one contacted Ms. Reed about returning to work in September 2021, when Dr. Sielatycki released her.

Ms. Murray stated that Ms. Reed could not work as a hospice nurse's aide if she could not perform activities as she testified. Also, she could not work as a nurse's aide without certification. Brightspring would have worked with Ms. Reed on recertification if she had agreed to return to work.

As to the medical proof, Dr. Bell testified that he did not test Ms. Reed's lifting capabilities himself but "just referred to her [functional capacity evaluation]."[4] He also stated that he did not place permanent restrictions because he "did not feel that she had a new or additional injury or change in her shoulder that had occurred."[5]

Dr. Sielatycki testified by standard form medical report, or C-32. He confirmed the 11% impairment rating and wrote the following about not imposing permanent restrictions:

---

[3] Ms. Reed turned in the computer after the branch manager asked for it in December 2020.
[4] Dr. Bell also completed a Physician Certification Form stating that Ms. Reed could not return to her pre-injury occupation. He testified he completed the form in error.
[5] Ms. Reed had previous surgery on the same shoulder.

3

"Unfortunately, [the functional capacity evaluation] was reported as not reliable and so no formal restrictions [were] given." He signed a Physician Certification Form stating that Ms. Reed could not return to her pre-injury occupation. Ms. Reed sent him a list of physical requirements for which Brightspring evaluated her ability as a hospice nurse's aide. She asked that he review the list before completing the form.

Dr. Geddes testified that he agreed with Dr. Sielatycki's decision to assign no permanent restrictions. He did not independently evaluate Ms. Reed for restrictions but relied on the functional capacity evaluation. He testified that Ms. Reed "probably could do [very heavy physical job duties] safely, but would it mean that it flared her symptoms more than, say, a [job in the] sedentary category[?] I think that is also likely." Dr. Geddes additionally testified that Ms. Reed has a degenerative spinal condition "and certainly doing heavier or more repetitive lifting would increase her risk likely of having a flareup of her symptoms [that] although not dangerous can be debilitating and painful."

Ms. Reed testified she recently attempted to return to Dr. Geddes for treatment of upper-back pain. She obtained an appointment, but Brightspring canceled it. Brightspring asserted that the medical evidence did not support Ms. Reed's right to treatment for upper-back pain.[6]

After the compensation hearing, a dispute arose over whether Ms. Reed sought attorney's fees for wrongful failure to initiate permanent disability benefits. Ms. Reed confirmed she sought this remedy. Brightspring objected, citing Ms. Reed's failure to provide notice before the compensation hearing that she sought attorney's fees under Tennessee Code Annotated section 50-6-226(d)(1)(B).

The technical record contains the following pre-hearing references to Ms. Reed's intent to seek attorney's fees:

- She listed "Attorney's Fees and Costs," without further description, as an additional issue to the post-discovery Dispute Certification Notice;
- Her counsel filed a motion seeking approval of a 20% contingency fee; and
- Ms. Reed's pre-hearing brief stated the following issue for determination at the compensation hearing: "whether penalties and attorney's fees should be lodged against the employer for failure to provide ongoing statutory medical treatment for the work-related injuries, especially the back."

---

[6] Ms. Reed filed a motion to add or confirm a bad-faith claim on this issue, which the Court declined to decide at the compensation hearing because she filed it only three days before the hearing.

4

## Findings of Fact and Conclusions of Law

*Evidentiary Rulings*

Before hearing the proof at this compensation hearing, the Court considered several evidentiary objections by Brightspring Health and Ms. Reed's responses to the objections. The Court decides the issues as follows.

*Objections Made in Dr. Geddes's Deposition*

Brightspring renewed several objections it made during Dr. Geddes's deposition. Most were to the form of the question or to leading.[7] Brightspring also objected to Ms. Reed's counsel referencing Ms. Reed's Social Security disability award during her examination of Dr. Geddes. Finally, it objected to questions that allegedly required Dr. Geddes to speculate.

The Court overrules all objections to the form of the questions. Many failed to state specific reasons for the objections, while the questioning party cured other objections by rephrasing the question. Finally, when Dr. Geddes was unclear about a question posed to him, he made that fact known.

All objections based on leading are also overruled. Tennessee Rule of Evidence 611(c) (2023) permits limited use of leading questions in direct examination if necessary to develop a witness's testimony. The leading questions asked in direct examination helped develop Dr. Geddes's testimony. The Court does not find any question where he limited or failed to explain his answer in response to a leading question.

The Court sustains Brightspring's objection to questions referring to Ms. Reed's Social Security award. Different determinative standards apply to Social Security and workers' compensation disability awards. For that reason, the consideration of Ms. Reed's award of Social Security disability benefits is irrelevant to any issue on which Dr. Geddes could testify, and any probative value is outweighed by the potential for undue prejudice.[8]

Finally, the Court overrules the objections based on speculation. Any speculation by Dr. Geddes will reduce the weight of his testimony.

---

[7] Ms. Reed also made numerous objections to the form of the questions and to leading. The Court extends its decisions on Brightspring's objections to those made by Ms. Reed.

[8] The Court admitted Ms. Reed's testimony about filing for Social Security as relevant on the issue of whether she unreasonably declined to return to work for Brightspring.

*Timeliness Objections*

Brightspring moved to exclude certain filings made by Ms. Reed on February 2, 2024, ten calendar days before the trial date. It argued the Bureau's rules require filing no later than ten business days before trial, or January 29.

During the first scheduling hearing in November 2022, the Court informed the parties that, for ease of calculation, it sets deadlines based on ten calendar days before the compensation hearing. Neither party questioned the calculation. The Court also set deadlines based on calendar days when it amended the scheduling order in September 2023. The Court later changed the date of the compensation hearing to February 12 by agreement. A new scheduling order was not entered.

Brightspring's argument about the business-days deadlines in the Bureau's rules is unpersuasive. The Court clarified in the scheduling hearings and later orders that it set filing deadlines in this case for ten calendar days before the compensation hearing, and neither counsel raised objection. No order changed these deadlines for the hearing rescheduled to February 12.[9]

February 2 was the last day for filing documents under the deadline based on ten calendar days before the February 12 compensation hearing. Thus, Brightspring's objection is overruled because Ms. Reed met this deadline.

*Emails Between Counsel*

Ms. Reed introduced copies of emails from November 23-December 30, 2021, between her attorney and Brightspring's counsel. As foundation, she submitted her attorney's sworn declaration confirming the truthfulness and correctness of the content (including transmission data, email addresses, and text) in the emails. Her attorney also stated that she "conducted [the emails] during the scope [and] course of [her] representation of the Employee." Brightspring objected that the emails constitute inadmissible hearsay; that Ms. Reed's counsel's sworn statement violates the lawyer-as-witness rule; and the emails contain inadmissible settlement negotiations.

The first two objections are intertwined. If the sworn statement violates the lawyer-as-witness rule, no foundation exists for the email's admissibility under the business records exception to the rule excluding hearsay. The lawyer-as-witness rule in Supreme Court Rule 8, Rule of Professional Conduct 3.7 (2023), states, "A lawyer shall not act as

---

[9] A docketing notice for the February 12 compensation hearing inadvertently set a deadline based on business days for filing a pre-compensation hearing statement. However, neither party filed a pre-hearing statement, so the question is moot.

6

an advocate at a trial in which the lawyer is likely to be a necessary witness." However, exceptions to the rule include when "the testimony relates to an uncontested issue[.]"

Here, Ms. Reed's attorney directed her sworn statement to issues that Brightspring did not contest—whether the copies of the emails are true and correct and whether counsel sent the emails in the course and scope of her representation of Ms. Reed. For that reason, the Court overrules the objection that counsel's sworn statement violates the lawyer-as-witness rule.

Further, the sworn statement shows that Ms. Reed's attorney sent the emails, which preserved copies of the communications, in the regularly conducted activity of her law practice. For that reason, the emails are covered by the exception for records of regularly conducted activity in Tennessee Rule of Evidence 803(6) (2023). Moreover, the Appeals Board suggested the procedure for introducing emails between counsel, which Ms. Reed's attorney followed in this case. *See Thompson v. Comcast Corp.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *16 (Jan. 30, 2018) (it was harmless error to admit emails into evidence over one party's objection where "there was no affidavit or deposition accompanying the emails"). Thus, the Court overrules Brightspring's hearsay objection.

Finally, Brightspring objected to the emails because they contain settlement negotiations. Ms. Reed countered that most of the discussion in the emails concerned matters other than settlement negotiations. For instance, her attorney requested certain documents from Brightspring, including documentation of the termination of her temporary disability benefits. Additionally, the emails contain substantive discussions as to whether Brightspring's alleged failure to offer Ms. Reed employment after the date of maximum medical improvement constituted a constructive termination of employment. Ms. Reed agreed to redact the part of the emails discussing settlement. Brightspring insisted that the rule of "completeness" requires consideration of the entire emails.

After reading the emails in their entirety, as Brightspring asked, the Court disagrees with its characterization that the emails contain mostly settlement discussions. In fact, only a proportionally small part of the emails discussed settlement. One conversation discussed a general release of employment but used broad, general language without specific terms. The emails contained more discussion about Ms. Reed's attempt to obtain certain workers' compensation documents and argument of the parties' positions on whether Brightspring had terminated Ms. Reed.

For these reasons, the Court sustains Brightspring's objection as to the email discussions on settlement negotiations. The objections to the discussions not concerning settlement negotiations are overruled. The Court disagrees that the small amount of general discussion within the emails about settlement sufficiently colors all the communications as inadmissible. *See* Tenn. R. Evid. 408 (settlement negotiations are admissible when used to prove matters other than liability for or invalidity of a civil claim).

7

*Physician Certification of Dr. Sielatycki*

Ms. Reed submitted a Physician Certification Form signed by Dr. Sielatycki in support of her claim for extraordinary benefits.[10] Brightspring argued that the form is not self-authenticating and submission without foundational testimony by Dr. Sielatycki violates the hearsay rule. It also argued that the form did not satisfy statutory requirements because Dr. Sielatycki signed it after he moved out of the state and was no longer Ms. Reed's authorized treating physician.

Ms. Reed countered that Dr. Sielatycki completed and signed the certification form as part of the process of his completion and signature of the C-32 Standard Medical Form.[11] Thus, the certification form should be self-authenticating, as is the C-32. She also contended that nothing in section 242(a)(2)(B) removes authorized treating physician status because the physician ceases treatment due to relocation of his practice.

In analyzing this issue, the declarations in the certification form are hearsay; they were made out of court and offered as truthful statements. *See* Tenn. R. Evid. 801(c); *see also Williams v. United Parcel Serv.*, No. M2009-02334-WC-R3-WC, 328 S.W.3d 497 (Tenn. Workers' Comp. Panel Sept. 28, 2010). None of the hearsay exceptions in Tennessee Rule of Evidence 803 applies.

But the plain language of section 50-6-242(a)(2)(B) requires an employee to prove her inability to return to her previous occupation by a form. Thus, the form is an essential element of the employee's proof of entitlement to extraordinary benefits. The statute does not describe how the employee must submit the signed form into evidence.

In *Batey v. Deliver This, Inc.*, 568 S.W.3d 91 (Tenn. 2019), the employee offered into evidence a certification form signed by the physician. The physician signed this form after he gave deposition testimony. The physician wrote on the form that he gave his opinion the employee could not return to the pre-injury occupation consistent with his deposition testimony, and a statement of the employee's job requirements was introduced during the deposition. The Supreme Court did not reverse the trial court's admission of the form into evidence.

The Supreme Court adopted the Appeals Board's opinion in its entirety. *Id.* at 93. The Appeals Board wrote the following about the Physician Certification Form: "Once [the

---

[10] Ms. Reed also submitted a certification form signed by Dr. Todd Bell. Dr. Bell authenticated it during his deposition testimony, but testified that, in his opinion, Ms. Reed's shoulder injury would not disable her from returning to work as a nurse's aide.

[11] Although the Court marked the Physician Certification Form (Exhibit 5) separately from the C-32 (Exhibit 4), Ms. Reed submitted them together.

doctor] signed the certification form and it was properly submitted to the court, employee's burden of establishing this criteria required by section 242(a)(2)(B) was satisfied." *Id.* at 98. Later the Board held, "the statute requires only that the injured worker submit the required certification form signed by the authorized treating physician, and the burden then shifts to the employer to establish by clear and convincing evidence that the injured worker *is* capable of returning to a job within his or her pre-injury occupation[.]" *Id.* at 99-100 (Emphasis in original).

Further, *Williams v. United Parcel Service, supra,* is instructive in its analysis of this issue. In *Williams,* the Supreme Court Panel held that the impairment report of a physician selected under the Medical Impairment Rating Registry statute was admissible as self-authenticating if prepared consistent with the statutory requirements. The Panel in *Williams* wrote that the "General Assembly's purpose [in enacting the registry statute] was to provide an efficient method for presenting neutral, objective opinions regarding an employee's impairment[.]" *Id.* at 502.

Here, the General Assembly required in section 50-6-242(a)(2)(B) that an employee prove her inability to return to the pre-injury occupation by a form. As in other statutes allowing submission of evidence by form, this statute provides an efficient way to submit a medical opinion into evidence. Based on the above authority, the Physician Certification Form signed by Dr. Sielatycki receives self-authenticating status under section 50-6-242(a)(2)(B). The Court therefore overrules Brightspring's objection.

Finally, no authority supports the proposition that, by virtue of his move to another state during the middle of Ms. Reed's treatment, Dr. Sielatycki lost his status of authorized treating physician for purposes of signing the certification form. The Court overrules Brightspring's objection on this point as well.

### Substantive Decisions

The employee at a compensation hearing must prove all elements of her claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2023).

### Motion for Involuntary Dismissal

At the end of Ms. Reed's proof, Brightspring moved for involuntary dismissal under Tennessee Rule of Civil Procedure 41.01(2), arguing that she had not proven facts showing a right to relief. The Court took the motion under advisement.

The Court overruled numerous evidentiary objections, including those to the Physician Certification Form signed by Dr. Sielatycki and emails between the parties. With that evidence admitted, the Court denies Brightspring's motion for involuntary dismissal.

9

*Permanent Total Disability Benefits*

Tennessee Code Annotated section 50-6-207(4)(B) provides for permanent total disability benefits when a work injury "totally incapacitates the employee from working at an occupation that brings the employee an income."

Here, none of the treating physicians placed permanent restrictions on Ms. Reed's activities. Thus, the proof on the issue of her permanent incapacity to work rests entirely on her own testimony. She testified that pain from her work injuries and the risk of further injury precludes her from performing the duties of any job she has ever performed for an income.

Brightspring countered that Ms. Reed cannot receive permanent total disability benefits because she has no medically-imposed permanent restrictions. Further, she failed to prove by vocational expert testimony that her work injuries incapacitate her from performing any available job in the labor market.

Brightspring is correct. The Court may consider Ms. Reed's personal assessment of her physical injuries and the impact they have on her capacity to work at an occupation that brings an income. *See Vinson v. United Parcel Serv.*, 92 S.W.3d 380, 386 (Tenn. 2002). Ms. Reed credibly testified that her injuries physically limit her from performing the strenuous physical labor required in caring for hospice patients.

However, to prove entitlement to permanent total disability benefits, she must prove by a preponderance of the evidence that her injuries permanently disable her from performing all occupations that would bring her an income. *Id.* at 385-6. Here, none of the physicians who treated her placed permanent restrictions on her activities. Further, although not an absolute requirement, Ms. Reed did not present vocational evidence that her self-described limitations permanently disable her from performing any income-producing occupation.

Therefore, the Court holds that Ms. Reed did not prove by a preponderance of the evidence that she is entitled to permanent total disability benefits.[12]

*Resulting Award*

Section 50-6-207(3)(B) provides for a resulting award of permanent partial disability benefits, if on a certain date calculated under the statute, the employee "has not

---

[12] This decision removes the need to decide Brightspring's argument that Ms. Reed cannot seek permanent total disability benefits because she settled her original award.

returned to work with any employer[.]" Here, the settlement set August 19, 2022, as the date for assessment of Ms. Reed's entitlement to a resulting award. On that date, she had not returned to work for any employer.

Section 50-6-207(3)(D) states that an employee cannot receive a resulting award if her failure to return to work is due to voluntary resignation.

Brightspring argued that Ms. Reed is not entitled to a resulting award because she unreasonably declined its offer to return to work as a hospice nurse's aide. It argued that the treating physicians' failure to assign permanent restrictions means that she was physically able to perform the offered position. Ms. Reed countered that Brightspring's offer to return her to work was insincere and pretextual because it was made five months after she attained maximum medical improvement. Also, her work injuries disabled her from performing the strenuous duties of a hospice nurse's aide.

In *Dennis v. Polymer Components,* 2016 TN Wrk. Comp. App. Bd. LEXIS 47, at *10-12 (Sept. 27, 2016), the Appeals Board discussed the framework for evaluating this issue.[13] The threshold question is whether the employee made a meaningful return to work. An employee who is unable to return to work due to the work injury does not make a meaningful return to work. However, an employee who does not return to work because of personal or other reasons unrelated to the work injury may be said to have made a meaningful return to work. The resolution of the issue turns on what is reasonable under the facts presented.

The Court finds that Ms. Reed's failure to return to work at Brightspring was reasonable. She testified credibly that her work injuries incapacitated her from performing the strenuous duties required to care for hospice patients. The lack of permanent restrictions from the treating physicians tells an incomplete story about the reasonableness of Ms. Reed's decision not to return to Brightspring. The physicians did not independently examine her to determine her physical capacity. They instead relied on the results of a test they did not personally observe. Also, both Drs. Sielatycki and Bell signed certification forms stating that Ms. Reed could not return to her pre-injury occupation due to her work injury, although Dr. Bell testified he did so in error.

The evidence revealed other factors supporting the reasonableness of Ms. Reed's failure to return to work for Brightspring. For instance, the human resources specialist acknowledged that Ms. Reed could not perform the duties of a hospice nurse's aide if Ms. Reed was incapacitated as she testified. Also, Dr. Geddes testified that repetitive physical work would increase the chances that Ms. Reed would endure "debilitating and painful" flareups of her spinal condition.

---

[13] *Dennis* involved a claim for temporary total disability benefits. However, the Appeals Board stated that the same principles apply to permanent disability benefits. *Id.* at *10.

Further, Brightspring's effort to return Ms. Reed to work was disingenuous. It asked her to return her work computer in December 2020 and made no effort to return it to her over the ensuing 14 months before it sent the "offer" letter. The human resources specialist sent that letter in February 2022, five months after Ms. Reed was released by Dr. Sielatycki, without first determining whether Ms. Reed's nurse's aide certification had expired. Additionally, the letter was sent only after the parties' attorneys discussed Ms. Reed's employment status. Finally, the letter did not offer to return Ms. Reed to work but instead gave her a deadline to announce her intentions about returning to work.

Under the totality of the circumstances, the Court finds that Ms. Reed cannot return to the strenuous job of hospice nurse's aide due to her permanent work injuries. Thus, she did not unreasonably decline work when she failed to respond to the letter. Since she had not made a reasonable return to work on August 19, 2022, she is entitled to a resulting award of permanent partial disability benefits.

Section 50-6-207(3)(B) calculates a resulting award using multipliers of the original award. Here, two of the four listed multipliers—failure to make a meaningful return to work (1.35) and her age (1.2)—apply. Therefore, the Court holds that Ms. Reed is entitled to a resulting award of $12,635.68.

*Extraordinary Permanent Disability Benefits*

Section 50-6-242(a)(2) provides that, "in extraordinary cases" where the employee is entitled to a resulting award, the Court can award additional permanent disability benefits not to exceed 275 weeks inclusive of the resulting award. The employee must prove three factors by clear and convincing evidence: 1) an impairment rating of at least 10%; 2) the treating physician's certification by form that "due to the permanent restrictions on activity the employee has suffered as a result of the injury the employee no longer has the ability to perform the employee's pre-injury occupation;" and 3) the employee is not earning greater than or equal to 70% of the employee's pre-injury salary. *Id.*

Here, the only issue is whether Ms. Reed proved she can no longer perform her pre-injury occupation. She presented a Physician Certification Form signed by Dr. Sielatycki stating that "due to permanent restrictions on activity the employee has suffered as a result of the injury [Ms. Reed] no longer has the ability to perform the employee's pre-injury occupation."

Brightspring argued that Ms. Reed cannot recover extraordinary benefits because none of the physicians, including Dr. Sielatycki, set permanent restrictions. The Court agrees.

The plain language of the statute hinges entitlement to extraordinary benefits on

12

"*permanent restrictions on activity* that the employee has suffered as a result of the [work] injury[.]" (Emphasis added). None of the treating physicians assigned permanent restrictions. While Dr. Sielatycki signed the certification form, he contradicted the statement in the form that Ms. Reed had permanent restrictions when, in his C-32, he wrote that the functional capacity evaluation "was reported as not reliable and so no formal restrictions [were] given."

For these reasons, the Court holds that Ms. Reed is not entitled to extraordinary benefits.

*Medical Benefits*

Section 50-6-204 requires an employer to provide medical benefits for treatment of an employee's work injuries. Here, Ms. Reed proved that she injured her right shoulder, cervical spine, and thoracic spine arising primarily in the course and scope of her employment at Brightspring. Although the orthopedists did not treat Ms. Reed's thoracic spine, the original treating physician diagnosed a thoracic strain and treated it. Thus, the Court holds that Brightspring shall furnish reasonable and necessary lifetime medical treatment of the work injuries to Ms. Reed's right shoulder, cervical spine, and thoracic spine.

The Court disagrees that the reference in the settlement agreement to Dr. Geddes as the authorized treating physician for Ms. Reed's "neck" means that she bargained away medical benefits on her thoracic spine. The agreement provided her the full measure of medical benefits afforded by statute, including for treatment of the thoracic strain diagnosed by the first physician authorized to treat her. In the settlement, Brightspring paid no consideration for a reduction of future medical benefits below the statutory threshold; thus, it is liable for all reasonable and necessary treatment of Ms. Reed's work-related injuries, including for the injury to her thoracic spine. It shall provide a panel for treatment of her thoracic spine if it will not authorize Dr. Geddes to treat her thoracid spinal strain.

*Attorney's Fees*

Determination of this issue requires analysis of whether Ms. Reed gave sufficient pre-hearing notice that she intended to seek attorney's fees under section 50-6-226(d)(1)(B) for Brightspring's alleged wrongful failure to initiate permanent disability benefits. A review of Ms. Reed's filings with the Court reveals that she did not.

Ms. Reed's reference to "attorney's fees" in the additional issues she filed to the Dispute Certification Notice gave only general notice of her intent to seek attorney's fees. The motion for attorney's fees that her motion counsel filed before the compensation hearing sought only approval of the 20% contingency fee arrangement with Ms. Reed. The

only attorney's fee discussed in her pre-trial brief was one for Brightspring's alleged failure to provide medical benefits, "especially [of] the back."

Since Ms. Reed never specified before the compensation hearing that she intended to seek attorney's fees under section 226(d)(1)(B) for wrongful failure to initiate permanent disability benefits, the Court holds that she failed to give Brightspring notice of that issue. For that reason, the issue will not be decided as part of the compensation hearing.

Finally, the Court declines to award attorney's fees for Brightspring's failure to authorize treatment for her back. Ms. Reed did not provide sufficient evidence about what the decision-maker knew at the time the decision to cancel the appointment was made to establish her entitlement to attorney's fees under section 50-6-226(d)(1)(B). *See Hardin v. W. A. Kendall & Co.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 23, at 18-19 (June 10, 2019) (in determining whether a denial is wrongful, courts look to "the information available to the employer at the time of the denial").

Ms. Reed's counsel sought approval of a fee based on 20% of the amount of the resulting award. Counsel worked many hours presenting this complex case, and her efforts resulted in an award in favor of Ms. Reed. For that reason, the Court approves a fee totaling $2,527.14 under section 50-6-226(a)(1).

Brightspring shall pay the $150.00 filing fee to the Clerk of the Court of Workers' Compensation Claims within five business days from the date of the issuance of this order. It or its carrier shall complete and file an SD2 form documenting the conclusion of this case within 10 business days. Unless appealed, this order becomes final in 30 days.

**IT IS ORDERED.**

**ENTERED March 14, 2024.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical record:
1. Petition for Benefit Determination filed December 19, 2021
2. Petition for Benefit Determination filed August 24, 2022
3. Dispute Certification Notice issued October 21, 2022
4. Dispute Certification Notice issued July 26, 2023
5. Dispute Certification Notice issued December 30, 2023

6. Request for Scheduling Hearing
7. Scheduling Order
8. Motion to Amend Scheduling Order
9. Joint Motion to Amend Scheduling Order
10. Notice of Filing of C-32 and Physician Certification of Dr. Sielatycki
11. Order amending Scheduling Order
12. Employer's Motion to Exclude C-32 and Physician Certification forms
13. Employer's Motion for Extension of Time
14. Employee's response to Motion for Extension of Time
15. Order Granting Extension
16. Employee's List of Proposed Witnesses
17. Employee's List of Proposed Exhibits
18. Employer's Objection to the C32 of Dr. Sielatycki
19. Employee's Response to Objection C32 of Dr. Sielatycki
20. Order
21. Order Setting Status/Scheduling Hearing
22. Order Setting Scheduling Hearing
23. Employer's Withdrawal of Objection to Use of C32 of Dr. Sielatycki
24. Scheduling Order
25. Order Modifying Scheduling Order
26. Employer's Motion to Amend Dispute Certification Notice
27. Employee's Response to Motion to Amend Dispute Certification Notice
28. Order
29. Notice of Filing of C-32 and Physician Certification form of Dr. Sielatycki
30. Employer's Witness and Exhibit List
31. Employer's Compensation Hearing Brief
32. Employee's Amended Notice of Filing of List of Proposed Exhibits
33. Employee's Notice of Amended List of Witnesses
34. Employee's Response to Employer's Motion in Limine to Exclude Witnesses
35. Order
36. Employee's Trial Brief
37. Subpoena of Melanie Murray
38. Employer's additional issues to October 2022 Dispute Certification Notice
39. Employer's additional issues to December 2023 Dispute Certification Notice
40. Employee's additional issues to December 2023 Dispute Certification Notice
41. Employer's Motion in Limine Regarding Deposition of Dr. Geddes
42. Employee's Response to Motion in Limine
43. Employer's Motion in Limine to Exclude Witnesses
44. Employer's Motion in Limine to Exclude Documentation Including Settlement Negotiations
45. Employee's Response to Motion in Limine
46. Employer's Motion in Limine to Exclude Late-Filed Exhibits and Trial Brief
47. Employee's Response to Motions in Limine

15

48. Employee's Amended Response to Motion in Limine
49. Motion for Approval of Attorney's Fees
50. Employee's Motion to Add or Confirm Bad Faith Claim
51. Employer's Response to Employee's Motion to Add or Confirm Bad Faith Claim
52. Order Setting Deadlines for Filings
53. Rule 72 Declaration in Support of Attorney Fee Statement
54. Employer's Response to Employee's Motion for Approval of Attorney's Fees
55. Employee's Reply to Employer's Response to Employee's Motion for Approval of Attorney's Fees
56. Employer's Response to Employee's Response to Employer's Response to Employee's Motion for Approval of Attorney's Fees

Exhibits:
1. Settlement papers
2. February 22, 2022 letter
3. C-30-A Final Medical Report of Dr. Bell
4. C-32 Standard Form Medical Report of Dr. Sielatycki
5. Physician Certification Form of Dr. Sielatycki
6. Transcript of the deposition of Dr. Geddes
7. Transcript of the continued deposition of Dr. Geddes, including exhibits
8. Transcript of the deposition of Dr. Bell
9. Medical records of Drs. Sielatycki and Geddes and Chattanooga Imaging
10. Medical records of Dr. Sass, Prime Imaging, Dr. Bell, Dr. Sielatycki, ATI Physical Therapy, and Dr. Geddes
11. Supplemental medical records of Dr. Bell
12. Rule 72 sworn declaration of Carmen Y. Ware, attaching emails between counsel
13. Letters from Ms. Ware to Drs. Sielatycki and Bell, attaching Physician Certification Forms of Drs. Sielatycki and Bell
14. Unusual Occurrence Report
15. Job Description/Performance Appraisal Hospice Aid form
16. Certified Nurse Aide Competency Validation form
17. Tennessee Nurse Aide Registry letter—Tennessee Department of Health
18. Nurse Aide Information pages from website of the Tennessee Department of Health (identification only—sustained objection for late filing)
19. Form C-26 Notice of Change or Termination of Compensation Benefits
20. HIPAA Security and Confidentiality Agreement (identification only—sustained objection for failing to list on exhibit list)
21. Social Security Disability Award (sustained relevance objection except as to application of Social Security offset)
22. Employee Choice of Physician form
23. Employer's interrogatory responses (overruled hearsay objection)
24. Employer's responses to requests for admissions

16

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on March 14, 2024.

| Name | U.S. Mail | Email | Service sent to: |
|---|---|---|---|
| Carmen Ware<br>Employee's Attorney | | X | Cyware@thewarelawfirm.com |
| Allen Grant<br>Ryan Mirian<br>Employer's Attorneys | | X | agrant@eraclides.com<br>rmirian@eraclides.com |

Penny Shrum, Court Clerk
**WC.CourtClerk@tn.gov**

17



## Right to Appeal:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____      ☐ Motion Order filed on _____

☐ Compensation Order filed on _____      ☐ Other Order filed on _____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s) (Requesting Party):** _____ ☐Employer☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s) (Opposing Party):** _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a
true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described
in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this
case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*